UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AGNES XIE,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>DE YOUNG PROPERTIES 5418, LP,<br><br>　　　　　Defendant. | No. 1: 16-cv-01518-DAD-SKO<br><br>ORDER GRANTING MOTION FOR SUMMARY JUDGMENT; DENYING ALL OTHER MOTIONS AS MOOT<br><br>(Doc. Nos. 70, 124, 125, 126, 135, 137) |

On October 16, 2018, this matter came before the court for hearing on defendant's motion for summary judgment, or in the alternative, partial summary judgment. (Doc. No. 70-2.) Plaintiff Agnes Xie ("plaintiff") appeared at the hearing representing herself *pro se*, and attorney Jared Marshall appeared on behalf of defendant De Young Properties 5418, LP ("defendant). (Doc. No. 136.) Following oral argument, defendant's motion was taken under submission. Having considered the parties' briefs and oral arguments, and for the reasons stated below, the court will grant defendant's motion for summary judgment and deny plaintiff's remaining motions as moot.

/////
/////
/////
/////

1

## FACTUAL BACKGROUND[1]

In early 2013, plaintiff and her husband, Mark Fletcher, were residing on the east coast of the United States. (Doc. No. 70-3 (defendant's Statement of Undisputed Facts, hereinafter "UF") at ¶¶ 1–2.) Plaintiff's husband had previously lived in Fresno, but had moved cross-country to live with plaintiff after they married. (UF at ¶ 2.) When plaintiff discovered that her husband's Fresno-based business was suffering financial difficulties, she tried to convince him to move back to Fresno by arranging for a custom home to be built for his use. (UF at ¶¶ 3–6.)

Plaintiff selected defendant De Young Properties, 5418 LP ("defendant") to construct the new home in Fresno, and on June 25, 2013, plaintiff provided defendant with a $2,500.00 lot reservation fee. (UF at ¶ 7–8.) On June 26, 2013, defendant offered plaintiff a 3% discount on the listed purchase price of the new home based on plaintiff's promise to pay the purchase price in cash. (UF at ¶ 28.) On June 30, 2013, plaintiff met with Tina Larson ("Larson"), one of defendant's sales representatives. (UF at ¶ 9.) During that meeting, plaintiff signed three documents: (1) a purchase worksheet; (2) a purchase and sale agreement and deposit receipt and escrow instructions ("contract 1"); and (3) a contract and addendum signature acknowledgement sheet ("signature acknowledgment sheet"). (UF at ¶ 9.)

The purchase worksheet was signed by Larson and stated at the bottom:

> There have been no other promises made other than what is stated on this purchase worksheet. There are no unresolved issues, no 'side agreements', nor are there other terms not disclosed on this purchase worksheet or in the Purchase and Sale Agreement. Every agreement made has been reduced to writing.

(UF at ¶ 10.)

/////

---

[1] These facts are largely derived from defendant's Statement of Undisputed Facts. (Doc. No. 70-3.) On November 13, 2018, plaintiff submitted untimely objections to defendant's Statement of Undisputed Facts, approximately one month after defendant's motion for summary judgment had been taken under submission for decision by the court. (Doc. No. 142.) In her untimely objections, plaintiff states only that she objects to certain facts identified as undisputed by defendant, but fails to state on what basis she objects to them nor provides any alternative statement of undisputed or disputed facts. (*Id.*) Therefore, the court will accept defendant's version of the facts as undisputed unless they have been specifically disputed by evidence presented by plaintiff on summary judgment.

The first paragraph of this contract 1 stated:

> This Agreement is entered into on 6/30/2013, by Agnes Xie ("Buyer") and De Young Properties 5418 LP, a California limited partnership ("Seller"). This Agreement is not binding until accepted by Seller and such acceptance shall be indicated by Seller's execution on page 13 herein.

(UF at ¶ 11.) However, contract 1 is unsigned by any authorized representative of defendant. (*Id.* at ¶¶ 12–13.) In paragraph two, contract 1 indicated that the purchase price of the home was $287,110.00 and stated: "Buyer to pay $% None down payment on the Purchase Price including the deposit (above) and obtain a CASH loan." (*Id.* at ¶ 14.) In paragraph three, contract 1 stated: "Buyer and Seller agree that the purchase is contingent upon Buyer obtaining a 'Loan Commitment' for financing secured by the Property." (*Id.* at ¶ 15.) The signature acknowledgement sheet stated, "By signing in the spaces below, Buyer agrees each part of the contract has been fully explained by the Seller." (*Id.* at ¶ 16.)

Several weeks later, on August 1, 2013, plaintiff notified Larson via email that her husband wanted to meet with Larson the following day to "learn more about" his possible addition to the sale contract before committing to the transaction. (*Id.* at ¶ 17.) Plaintiff asked if she needed to be present for her husband to be added as a party to the contract. (*Id.*) Larson stated that she could meet with plaintiff's husband on August 4, 2013, and, if he wanted, Larson could add him as a party to the contract at that time without plaintiff's presence at the meeting. (*Id.*)

On the night of August 3, 2013, prior to the scheduled meeting between Larson and plaintiff's husband, Mark Fletcher, plaintiff emailed Larson and merely stated, "I have signed the contract and paid deposit, I am adding Mark to the contract." (*Id.* at ¶ 18.) On the morning of August 4, 2013, Larson replied to plaintiff's email, asking "[W]ould you like him alone on the contract? If there is to be a loan, whomever is on the contract will be applying for the loan." (*Id.* at ¶ 19.) Plaintiff quickly responded, "No. Both on contract. Do loan later." (*Id.* at ¶ 20.) Larson replied, stating: "There is no later. I have to process this contract this week. I have held it for you in my office but am normally required to turn in everything including the loan ap [sic] within 5 days." (*Id.* at ¶ 21.) Plaintiff responded, "Ok. Ask [M]ark to be added to contract. I

have [a] cash offer at this time so you can ask him to do [a] loan app later." (*Id.* at ¶ 22.)

The evidence before the court on summary judgment establishes that a second purchase and sale agreement was also created ("contract 2"). (*Id.* at ¶ 23.) The first paragraph of this contract 2 stated: "This Agreement is entered into on 6/30/2013, by Mark A. Fletcher . . . and DeYoung Properties 5418 LP, a California limited partnership . . .. This Agreement is not binding until accepted by Seller and such acceptance shall be indicated by Seller's execution on page 13 herein." (*Id.* at ¶ 24.) On page 13 of contract 2, there appeared signatures of Jerry A. De Young, president of De Young Properties 5418, LP, dated September 23, 2013, and Mark A. Fletcher, plaintiff's husband at the time. (Doc. No. 70-4 at 323.) Paragraph two of contract 2 stated that the purchase price for the home was $295,990.00, and that the buyer, Fletcher, would pay a five percent down payment of the purchase price, including the deposit, and would obtain a loan. (*Id.* at ¶ 25.) As with contract 1, contract 2 also stated, "Buyer and Seller agree that the purchase is contingent upon Buyer obtaining a "Loan Commitment" for financing secured by the Property." (*Id.* at ¶ 26.)

On August 15, 2013, plaintiff emailed Larson and asked, "Tina, let me know if Mark is added into the contract or the contract is switched to his name only? He is not clear on this when he reported this to me. He said he changed to his name only in the contract. Just need to clarify and please send a copy of signed contract to both of us by email." (*Id.* at ¶ 29.) Larson responded and explained, among other things, "Yes. We changed it into his name only." (*Id.* at ¶ 30.) Plaintiff replied, "So I am off the contract. Is this his request [or] your arrangement? I asked to add him on the contract." (*Id.* at ¶ 31.) Ms. Larson responded, "You are off, if you want to be on again, you will also need to apply on the loan. I can put you on the home's title though without you being on the contract. Is that what you want?" (*Id.* at ¶ 32.) Plaintiff confirmed, "Ok. I do not want to be on the loan but on the title." (*Id.* at ¶ 33.) Larson replied, "Ok. I will add your name. We need to remind the title office at closing so they do not charge you to be added after closing." (*Id.* at ¶ 34.)

On May 7, 2014, plaintiff emailed Larson to request that she be added back onto the purchase contract, stating that the "title agent told [her] that [she] would not be able to be added

to the title after closing if Mark does not want to at that time." (Doc. No. 70-4 at 217.) On May 28, 2014, plaintiff's husband, Mark Fletcher, cancelled contract 2. (UF at ¶ 35.) Upon cancellation of contract 2, defendant returned the $2,500.00 lot reservation check to plaintiff and returned all other monies paid toward the purchase to plaintiff and plaintiff's husband jointly. (*Id.* at ¶ 36.) Approximately six months later, on November 25, 2014, plaintiff's husband filed for divorce in Fresno County Superior Court. (*Id.* at ¶ 38.)

## PROCEDURAL HISTORY

Plaintiff Agnes Xie ("plaintiff") filed her original complaint in this court on October 7, 2016. (Doc. No. 1.) A first amended complaint was filed on January 3, 2017. (Doc. No. 7.) Defendant filed a motion to dismiss plaintiff's first amended complaint on January 17, 2017. (Doc. No. 8.) Following a hearing on March 21, 2017 (Doc. No. 23), the court granted defendant's motion to dismiss with leave to amend on April 6, 2017. (Doc. No. 25.) On May 8, 2017, plaintiff filed an incomplete amended complaint that was later stricken from the record. (*See* Doc. No. 29.) After receiving an extension of time to do so, plaintiff filed a second amended complaint on June 13, 2017 ("SAC"). (Doc. No. 33.) In her operative second amended complaint plaintiff asserts four claims: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) "fraud, deceit, concealment," and (4) negligence. (*Id.*) Defendant filed an answer on July 5, 2017. (Doc. No. 35.)

On September 29, 2017, the assigned magistrate judge issued a scheduling order governing this litigation. (Doc. No. 42.) The scheduling order set November 20, 2017 as the deadline to amend the pleadings, and March 20, 2018 as the deadline to complete non-expert discovery. (*Id.* at 2.) Plaintiff served extensive written discovery on defendant and made multiple requests to continue the deadline to complete non-expert discovery. The magistrate judge granted two of the three extensions of that deadline sought by plaintiff. (*See* Doc. No. 59, 65, 80.) Non-expert discovery finally closed in this case on July 6, 2018. (*See* Doc. No. 65 at 1.) Following the close of discovery, plaintiff nonetheless filed a motion to compel in three parts, the first part being filed on July 24, 2018 (Doc. Nos. 84, 88, 99), which resulted in an informal discovery conference and the issuance of several orders by the magistrate judge addressing

5

plaintiff's motions to compel.  (Doc. Nos. 95, 97, 106.)

Defendant filed a motion for summary judgment on June 26, 2018.  (Doc. No. 70.)  The hearing date for that motion was continued several times, with the hearing finally being re-scheduled for October 16, 2018.  (Doc. No. 136.)  On October 9, 2018, plaintiff filed a motion to stay and to continue the hearing on the motion for summary judgment.  (Doc. Nos. 124–125.)  On October 10, 2018, plaintiff filed an untimely opposition to defendant's motion for summary judgment.  (Doc. Nos. 127–129.)  On October 10, 2018, plaintiff filed an untimely declaration under penalty of perjury, also in opposition to the granting of summary judgment.  (Doc. No. 131.)  Defendant filed a reply on October 15, 2018.  (Doc. No. 132.)  Plaintiff filed unauthorized supplements to her opposition on October 15, 2018 and October 16, 2018.  (Doc. Nos. 133, 134.)[2]

The court heard oral arguments on defendant's motion for summary judgment on October 16, 2018, after which the motion was taken under submission.  (Doc. No. 136.)  The court noted that a written order would issue shortly after a settlement conference that was scheduled for November 7, 2018.  (*Id.*)  The settlement conference was held before the assigned magistrate judge as scheduled, but the parties were unable to reach a settlement.  (Doc. No. 141.)

On November 13, 2018, plaintiff submitted untimely objections to defendant's statement of undisputed facts (Doc. No. 142) and an unauthorized reply to defendant's objections regarding evidence plaintiff had submitted in opposition to the pending summary judgment motion.  (Doc. No. 143).

## LEGAL STANDARD

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

In summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact."  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387

---

[2] As noted, plaintiff's opposition and other filings relating to defendant's pending motion for summary were either untimely filed, unauthorized, or both.  Nonetheless, because plaintiff is proceeding in this action *pro se*, the court has considered all of those filings in resolving the motion.

6

(9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. *See* Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment."). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Wool v. Tandem Computs., Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (citations omitted); *see also Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000) ("A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact" precluding summary

judgment); *Summers v. A. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997) ("a mere scintilla of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather, the nonmoving party must introduce some significant probative evidence tending to support the complaint").

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." *Walls v. Cent. Contra Costa Cty. Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987). Undisputed facts are taken as true for purposes of a motion for summary judgment. *Anthoine v. N. Cent. Counties Consortium*, 605 F.3d 740, 745 (9th Cir. 2010). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . .. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

**DISCUSSION**

Defendant argues that based upon the evidence now before the court, there is no genuine dispute as to any material fact, and it is entitled to summary judgment in its favor on all four of plaintiff's claims. (Doc. No. 70-2 at 6.) Plaintiff opposes summary judgment on all claims. (Doc. Nos. 127–129, 131, 133.) The court will address each of plaintiff's claim separately.

**A.    Breach of Contract**

Plaintiff asserts claims for breach of contract in connection with both contracts 1 and 2. (Doc. No. 33 at 9–11.) Defendant argues that in response to its summary judgment motion plaintiff has not come forward with evidence sufficient to prove the existence of any enforceable contract to which she was a party. (Doc. No. 70-2 at 7–10.) Defendant also argues that, even if an enforceable contract existed between it and plaintiff and was breached, plaintiff has not presented evidence on summary judgment that she suffered either general or special damages as a result. (*Id.* at 10–13.)

A cause of action for breach of contract requires that plaintiff establish the following: (1) the existence of a contract; (2) plaintiff's performance; (3) defendant's breach; (4) resulting damage; and (5) causation. *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1388 (1990), *as modified on denial of reh'g* (Oct. 31, 2001) (citing *Reichert v. General Ins. Co.*, 68 Cal. 2d 822, 830 (1968)); *see also Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011); *Canedo v. Pacific Bell Telephone Co.*, ___F. Supp. 3d___, 2018 WL 4444508, at *7 (S.D. Cal. Sept. 18, 2018); *Boland, Inc. v. Rolf C. Hagen (USA) Corp.*, 685 F. Supp. 2d 1094, 1101 (E.D. Cal. 2010) ("Under California law, a claim for breach of contract includes four elements: that a contract exists between the parties, that the plaintiff performed his contractual duties or was excused from nonperformance, that the defendant breached those contractual duties, and that plaintiff's damages were a result of the breach.")

1. <u>Contract 1</u>

Here, contract 1 included a purchase and sale agreement, deposit receipt, and escrow instructions that were signed by plaintiff on June 30, 2013, after meeting with Larson, a sales representative for defendant. (*See* UF at ¶ 9.) Though contract 1 bore plaintiff's signature, there is no evidence before the court that it was ever signed by any authorized person acting on behalf of the defendant. (*Id.*) Based on the absence of evidence that contract 1 was ever signed on its behalf, defendant argues that it never accepted contract 1, nor entered into it. (Doc. No. 70-2 at 7–8.) Defendant also argues that the evidence on summary judgment establishes that contract 1 is void under California's Statute of Frauds (*see* California Civil Code § 1624), which provides that contracts for the sale of real property, or an interest therein, are invalid unless they are made in writing. (*Id.*) In her untimely declaration submitted in opposition to the granting of summary judgment, plaintiff argues that after signing contract 1, she was never informed that the contract also needed to be signed by defendant, nor that it was incomplete. (Doc. No. 131 at 1–2.) Moreover, plaintiff declares that she believes defendant engaged in the spoliation of evidence, apparently suggesting that defendant destroyed a version of contract 1 that included a signature of defendant's authorized representative. (*Id.* at 1.)

/////

9

Based upon the evidence presented on summary judgment, the court must conclude that contract 1 is unenforceable because it was never accepted by defendant. *See* Cal. Civ. Code § 1550 (contracts require: parties capable of contracting; their consent; a lawful object; a sufficient cause or consideration); *Am. Bldg. Maint. Co. v. Indem. Ins. Co. of N. Am.*, 214 Cal. 608, 615 (1932) ("An analysis of consent shows two elements, namely, an offer or proposal and an acceptance."); *see also Golden Eagle Ins. Co. v. Foremost Ins. Co.*, 20 Cal.App.4th 1372, 1385 (1993) ("[S]ilence or inaction does not constitute acceptance of an offer."); *Morton v. Foss*, 48 Cal. App. 2d 117, 122 (1941) ("In the absence of any acceptance of defendant's offer . . . plaintiff may not rely upon his subsequent willingness to comply with the terms . . . as the basis for an agreement binding upon the defendant."); *Norcia v. Samsung Telecommunications*, 845 F.3d 1279, 1284–85 (9th Cir. 2017). The terms of contract 1 specifically stated that it was not a binding agreement until accepted by seller, which would be indicated by a signature on the contract. (UF at ¶ 11.) *See* Cal. Civ. Code § 1582 ("If a proposal prescribes any conditions concerning the communication of its acceptance, the proposer is not bound unless they are conformed to . . ..") Plaintiff argues in conclusory fashion that an executed version of contract 1 was destroyed by defendant. However, plaintiff simply has failed to come forward with any evidence supporting such a theory.[3] Even in her belated declaration submitted in opposition to defendant's motion, plaintiff does not state that she knows of the existence of a fully executed version of contract 1. Instead, plaintiff merely speculates about spoliation of evidence and declares that in June 2013, she believed she had a fully executed version of contract 1. (*See* Doc. No. 131 at 1–2.) Given the absence of any evidence in support of plaintiff's conclusory claim

---

[3] On August 7, 2018, the assigned magistrate judge denied plaintiff's motion to compel defendant to produce a version of contract 1 that included a signature by Jerry De Young. (Doc. No. 95 at 2.) In denying plaintiff's motion to compel, the magistrate judge noted that defendant had confirmed that it had no such document in its possession, custody, or control. (*Id.*) There is no evidence before the court on summary judgment that a fully executed version of contract 1 ever existed. Moreover, the delay between plaintiff's signing of contract 1 on June 30, 2013 and her contacts with Larson in August of 2013 to arrange her husband's meeting with Larson regarding the purchase, including Larson's August 3, 2013 response that she had been "holding" the contract for plaintiff and had to process it that week, all support the conclusion that no agreement between the parties to contract 1 had been reached.

10

that a fully executed contract 1 existed at one time, the court must conclude that contract 1 is not enforceable and that defendant is entitled to summary judgment in its favor on all of plaintiff's claims based on contract 1.

2. Contract 2

Contract 2 is a second purchase and sale agreement, signed on June 30, 2013, by Mark Fletcher and DeYoung Properties 5418 LP. (UF at ¶ 23.) Plaintiff is not a party to contract 2. (*Id.*) Defendant argues that at her deposition in this action, plaintiff conceded that contract 2 is unenforceable. (Doc. No. 70-2 at 9.) Defendant also contends that plaintiff is neither a party to nor a third-party beneficiary of contract 2 and thus, cannot enforce it. (*Id.* at 9–10.) Plaintiff opposes summary judgment in favor of defendant with respect to her claims based on contract 2, arguing that her name was removed from an addendum to contract 2 and that defendant had a practice of systematically forging signatures and changing details on contracts. (Doc. No. 131 at 2.)

Based upon the evidence presented on summary judgment, the court concludes that plaintiff lacks standing to seek to enforce contract 2 because she was not a party to that contract. *See EEOC v. Waffle House, Inc.,* 534 U.S. 279, 294 (2002) ("It goes without saying that a contract cannot bind a nonparty."); *GECCMC 2005–C1 Plummer St. Office Ltd. P'ship v. JPMorgan Chase Bank, Nat. Ass'n,* 671 F.3d 1027, 1033 (9th Cir. 2012) ("[O]nly a party to a contract or an intended third-party beneficiary may sue to enforce the terms of a contract or obtain an appropriate remedy for breach."); *Hess v. Ford Motor Co.*, 27 Cal. 4th 516, 524, 528 (2002) (a third party may enforce a contract only when the contracting parties intended that the third party be benefitted by the contract and that intent is reflected on the face of the agreement); *Gantman v. United Pac. Ins. Co.*, 232 Cal. App. 3d 1560, 1566 (1991) (stating that a non-party to a contract cannot seek to enforce its terms). Nor does plaintiff have standing to enforce contract 2 as a third-party beneficiary to that agreement, because no evidence has been presented indicating that contract 2 was intended to benefit her. *Karo v. San Diego Symphony Orchestra Ass'n*, 762 F.2d 819, 821-22 (9th Cir. 1985) ("[A] third party qualifies as a beneficiary under a contract if the parties intended to benefit the third party and the terms of the contract make that intent evident.");

11

*see also Hess v. Ford Motor Co.*, 27 Cal. 4th at 524, 528; *Jones v. Aetna Casualty & Surety Co.*, 26 Cal. App. 4th 1717, 1724 (1994) ("A third party may qualify as a beneficiary under a contract where the contracting parties must have intended to benefit that third party and such intent appears on the terms of the contract" but California law "excludes enforcement of a contract by persons who are only incidentally or remotely benefited by it.") In fact, here, the very language of contract 2 belies any intent of the parties to that agreement to benefit plaintiff by stating: "Fee title shall be vested in Mark A. Fletcher and [sic] Married Man Sole and Separate Property." (UF at ¶ 27.)

Moreover, the evidence before the court on summary judgment establishes that plaintiff knew at the time that contract 2 was created that she was not a party to it, and that she would not be listed on the title to the property, if at all, until after the close of escrow. In this regard, the evidence on summary judgment establishes that on August 15, 2013, after the creation of contract 2, plaintiff emailed Larson and asked if she and Fletcher were both parties to contract 2, or if it was in his name only. (UF at ¶ 29.) Larson responded that Fletcher was the only party to contract 2, but that plaintiff could be added to the title of the property after "closing." (UF at ¶ 34.) In an email sent to Larson on May 7, 2014, plaintiff acknowledged that she was not a party to contract 2 and asked to be added as a party to that contract because otherwise her husband could prevent her from being named on the title to the property after the close of escrow, if he so desired. (Doc. No. 70-4 at 217.)

In her declaration submitted in opposition to defendant's motion, plaintiff states that during this litigation Tina Larson told her that "[d]efendant systematically forge [sic] signatures and change contracts which is their common practice." (Doc. No. 131 at 2.) Plaintiff also has submitted an email she received from Larson dated July 4, 2018, in which Larson stated that she "noticed [Larson's] signature was forged on some of the documents by Elizabeth Cabral, the DeYoung escrow coordinator." (*Id.* at 17.) Relying on this evidence, plaintiff concludes that contract 2 must be missing pages that included her signature and would have established that she was a party to contract 2. (*Id.* at 2.)

/////

The conclusions drawn from the evidence by plaintiff are unfounded. Plaintiff's evidence, some of which is hearsay, fails to support her speculation that defendant's alleged practice of having employees sign documents for each other suggests the fraudulent removal of either her name or signature from contract 2. Plaintiff's evidence establishes nothing of the sort. Rather, the undisputed evidence on summary judgment establishes that plaintiff was never a party to contract 2. Indeed, the emails between plaintiff and Larson after contract 2 was created, and upon which plaintiff relies in opposing summary judgment, show that plaintiff was aware that she was not a party to that contract. (*See* UF at ¶¶ 32–34.)

There is simply no evidence before the court on summary judgment establishing the existence of a version of contract 2 that includes plaintiff as a party to that agreement. Accordingly, defendant is entitled to summary judgment in its favor with respect to plaintiff's breach of contract claim as to contract 2.

**B. Breach of Implied Covenant of Good Faith and Fair Dealing**

Because the court has concluded that there were no valid contracts between plaintiff and defendant, defendant is also entitled to summary judgment in its favor on plaintiff's claim for breach of the implied covenant of good faith and fair dealing. "The implied covenant of good faith and fair dealing rests upon the existence of some specific contractual obligation." *Racine & Laramie, Ltd. v. Dep't of Parks & Recreation*, 11 Cal. App. 4th 1026, 1031 (1992), *reh'g denied and opinion modified* (Jan. 6, 1993), *as modified on denial of reh'g* (Mar. 25, 1993) (citing *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 683-684 (1988); *see also Avidity Partners LLC v. State of California*, 221 Cal. App. 4th 1180, 1204 (2013). Such a claim is intended to supplement "the express contractual covenants, to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenants) frustrates the other party's rights to the benefits of the contract." *Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1153 (1990); *see also Avidity Partners LLC*, 221 Cal. App. 4th at 1204. Nonetheless, "[t]he implied covenant of good faith and fair dealing does not impose substantive terms and conditions beyond those to which the parties actually agreed." *Avidity Partners LLC*, 221 Cal. App. 4th at 1204 (citing *Guz v. Bechtel National Inc.*, 24 Cal.4th 317, 349 (2000)).

Here, because plaintiff has not presented evidence on summary judgment proving the existence of an enforceable contract, she also cannot prevail on her claim for breach of the implied covenant of good faith and fair dealing.

**C.     Claim for Fraud, Deceit, Concealment**

"The elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Golden Eagle Land Investment, L.P. v. Rancho Santa Fe Assn.*, 19 Cal. App. 5th 399, 428 (2018) (quoting *Beckwith v. Dahl*, 205 Cal. App. 4th 1039, 1060 (2012)); s*ee also* Cal. Civ. Code § 1709 ("One who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers.")

    1.  <u>Deceit through False Promises</u>

Plaintiff has alleged that the following acts by defendant's representatives give rise to liability for deceit through false promises: (1) Larson promised she would add plaintiff's husband to contract 1 but instead created contract 2; (2) Larson promised she would add plaintiff to contract 2, (3) Larson said she would add plaintiff to the title in lieu of adding plaintiff to contract 2. (*See* SAC, ¶¶ 58-63.)

However, there is no evidence before the court on summary judgment from which a reasonable fact-finder could conclude that defendant made false promises to plaintiff. To establish misrepresentation through a false promise, a plaintiff must show that "the defendant made a promise, and . . . the defendant did not really have that intent at the time that the promise was made, i.e., the promise was false." *Beckwith*, 205 Cal. App. 4th at 1059–1060 (citing *Lazar v. Superior Court*, 12 Cal. 4th 631, 639 (1996)).

Plaintiff contends that Larson falsely promised that she would add plaintiff's husband to contract 1, but instead created contract 2. (Doc. No. 33 at ¶ 60.) However, there is no evidence before the court on summary judgment that Larson made such a promise. Though plaintiff indicated to Larson that she wanted her husband to be added as a party to contract 1, from the evidence now before the court it appears that he had not given his consent to be added to that

14

contract. The evidence also establishes that plaintiff was aware of her husband's uncertainty about being added as a party, because plaintiff indicated to Larson that Fletcher needed to learn more the contract prior to committing to his involvement. (UF at ¶ 17.) Further, the evidence on summary judgment establishes that plaintiff told Larson to "[a]sk [M]ark to be added to the contract . . .", thus indicating that there was no promise to do so, due to Fletcher's own uncertainty. (*Id.* at ¶ 22.)

Plaintiff also contends that Larson falsely promised that she would add plaintiff to contract 2. (Doc. No. 33 at ¶ 62.) Again, there is no evidence before the court that Larson gave any such assurance. In fact, the evidence reveals that Larson explicitly offered to add plaintiff as a party to contract 2, but plaintiff declined when Larson told her that to do so, plaintiff would also need to be on the mortgage loan. (*See* UF at ¶ 33.) The evidence also establishes that in May 2014, plaintiff knew she was not a party to contract 2, because she again asked to be added as a party to it at that time. (Doc. No. 70-4 at 217.)

Finally, plaintiff argues that Larson falsely promised her that she could be added to the title on the property in lieu of adding her to the purchase contract. (Doc. No. 33 at ¶ 62–63.) Again, there is no evidence before the court suggesting that this is the case. Rather, the evidence is that Larson told plaintiff that she could be added after "closing"— meaning that she could be added to the title on the property after the close of escrow. (*See* UF at ¶ 32–34.) There is no evidence that Larson told plaintiff that she would be added as a party to contract 2; in fact, it was clear from Larson's email that she told plaintiff that they would need to remind the title office to add her after the "closing." (*Id.*) Because plaintiff's husband later cancelled contract 2, the sale never proceeded to the close of escrow, and plaintiff was never added to the title on the property because the property was never conveyed.

2. Liability through Concealment

Plaintiff argues that defendant concealed from her that there were additional steps before contract 1 could be executed and that she was not a party to contract 2 or included on the title to the property. (Doc. No. 131 at 17.) Defendant moves for summary judgment in its favor on this claim, arguing that based upon the evidence before the court, no concealment occurred.

15

"'[T]he elements of an action for fraud and deceit based on concealment are: (1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage.'" *Boschma v. Home Loan Ctr., Inc.*, 198 Cal. App. 4th 230, 248 (2011) (citing *Hahn v. Mirda*, 147 Cal. App. 4th 740, 748 (2007)); *see also In re Yahoo! Inc. Customer Data Security Breach Litigation*, 313 F. Supp.3d 1113, 1133 (N.D. Cal. 2018) (quoting *Tenet Healthsystem Desert, Inc. v. Blue Cross of Cal.*, 245 Cal.App.4th 821, 844 (2016)).

Here, no evidence has been presented suggesting that defendant concealed that there were additional steps to take before contract 1 could be executed. Indeed, the contract language explicitly stated that the agreement was "not binding until accepted by Seller and such acceptance shall be indicated by Seller's execution on page 13 herein." (UF at ¶ 11.) There was no reason that defendant should have expected plaintiff to be unaware of the terms of the contract when the terms were so clearly set forth. *See Brown v. Wells Fargo Bank, N.A.*, 168 Cal. App. 4th 938, 959 (2008) ("Reasonable diligence requires a party to read a contract before signing it.") (citing *Brookwood v. Bank of America,* 45 Cal. App. 4th 1667, 1674 (1996)); *Hadland v. NN Inv'rs Life Ins. Co.*, 24 Cal. App. 4th 1578, 1587 (1994) (In the context of an insurance contract, "[t]he plaintiff was not entitled to relief from the result of his failure to read the policy. . ..").

Plaintiff also contends that Larson committed fraud by concealment by removing plaintiff's name from contract 2 after providing her misleading information. (Doc. No. 133 at 3.) According to plaintiff, Larson told her that she could not be a party to contract 2 if she was not on the mortgage loan for the property. (*Id.* at 3, 20; *see also* UF at ¶ 32.) Plaintiff points to an email on May 21, 2014 from Casey McDaniel, a loan processor at De Young Mortgage, to Fletcher that

/////

/////

/////

16

contradicts Larson's statement in this regard.[4] Defendant argues that evidence of concealment is completely lacking because the evidence establishes Larson unequivocally disclosed to plaintiff that she was not a party to contract 2. (Doc. No. 70-2 at 17.)

Regardless of these communications, plaintiff has not presented any evidence suggesting that Larson made any misstatement "with the intent to defraud . . ." her. *Boschma*, 198 Cal. App. 4th at 248. An intent to defraud is "necessarily implied" when the misrepresentation is material and a party makes a statement "with knowledge of its falsity." *Cummings v. Fire Ins. Exch.*, 202 Cal. App. 3d 1407, 1418 (1988). Here, plaintiff herself acknowledges that Larson did not have an intent to mislead her and, at most, was merely negligent in telling her she had to be on the loan to be on the title to the property.[5] Absent any evidence of defendant's intent to defraud plaintiff, this aspect of plaintiff's fraudulent concealment claim also cannot survive summary judgment.

Finally, plaintiff argues that defendant engaged in fraud by "systematically forg[ing] signatures and chang[ing] contracts which is their common practice." (Doc. No. 131 at 2.) Again, plaintiff points to Larson's deposition testimony, statement to plaintiff, and emails as evidence that other DeYoung employees signed Larson's name to documents without her knowledge or consent. (*Id.* at 10–11, 17–19.) Based on this evidence, plaintiff argues that a forged contract addendum effectively removed her name from contract 2, because the contract addendum overwrote the entire contract. (*Id.* at 2.)

Evidence that Larson's signature was allegedly forged does not establish a triable issue of material fact as to any element of plaintiff's claim for fraud. In her email to plaintiff on July 4, 2018, Larson noted that the signature on the contract was not hers, but did not call into question

---

[4] Specifically, McDaniel wrote, "We have spoken with the title company and the lender we are submitting your loan to. The official position is that Agnes can be on title (Grant Deed) and not be on the loan. She will have to sign (and be notarized) for several of the loan documents including the Deed of Trust." (Doc. No. 133 at 22.) These differing opinions as to whether plaintiff was required to be listed as a borrower on a mortgage in order to be on title to the property are simply immaterial to plaintiff's claim of fraud by concealment.

[5] In this regard, in opposition to defendant's motion for summary judgment plaintiff stated, "Tina negligently misled plaintiff in terms of name on contract, on the title, and one [sic] loan." (Doc. No. 133 at 5.)

any other aspect of that contract or the parties thereto. (Doc. No. 131 at 17.) Moreover, this version of contract 2 to which Larson referred is entirely consistent with Larson's emails that informed plaintiff she was not a party to contract 2. (*See* UF at 32-34.) In short, the evidence upon which plaintiff relies in opposing summary judgment in no way supports her contentions that there was another version of contract 1 that was executed by defendant's representative, or a version of contract 2 that included plaintiff as a party thereto.

**D.    Negligence**

Plaintiff has also alleged that as the result of defendant's negligent failure to train its staff appropriately and its staff's failure to properly advise her, plaintiff and her husband suffered a breakdown of their marital relationship. (Doc. No. 33 at 15–16.) In moving for summary judgment on this claim. defendant argues that it did not have a duty to plaintiff regarding her marriage, and even if it did, plaintiff cannot prove that any breach of that duty proximately caused her some form of harm. (Doc. No. 70-2 at 18–20.)

"In order to establish negligence under California law, a plaintiff must establish four required elements: (1) duty; (2) breach; (3) causation; and (4) damages." *Ileto v. Glock Inc.*, 349 F.3d 1191, 1203 (9th Cir. 2003) (citing *Martinez v. Pacific Bell*, 225 Cal. App. 3d 1557 (1990)); *see also Artiglio v. Corning Inc.*, 18 Cal. 4th 604, 614 (1998). To determine whether a duty of care exists, courts must "evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed on the negligent party." *Friedman v. Merck & Co.*, 107 Cal. App. 4th 454, 465 (2003) (citing *Ballard v. Uribe*, 41 Cal. 3d 564, 572-573, fn. 6 (1986)); *see also Laabs v. Southern California Edison Co.*, 175 Cal. App. 4th 1260, 1272–73 (2009); *Ileto*, 349 F.3d at 1204.

It is highly unforeseeable that a real estate agent's role in facilitating the sale of a house could lead to the breakdown of a marriage. *See Friedman*, 107 Cal. App. 4th at 465 ("[F]oreseeability of harm is an important consideration in determining whether a duty is owed as a matter of law.") (citing *Randi W. v. Muroc Joint Unified Sch. Dist.*, 14 Cal. 4th 1066, 1077 (1997), as modified (Feb. 26, 1997)). Of course, "[a]n intervening cause which breaks the chain

of causation from the original negligent act is itself regarded as the proximate cause of the injury and relieves the original negligent actor of liability." *Schrimsher v. Bryson*, 58 Cal. App. 3d 660, 664 (1976). In any event, here there is absolutely no evidence before the court on summary judgment from which it could be found that defendant's negligence, if any, could have contributed to the decision by plaintiff and her husband to divorce. Plaintiff has not presented a scintilla of evidence on summary judgment that would support her negligence claim and defendant is therefore also entitled to judgment in its favor as to that claim.

## CONCLUSION

1. Defendant's motion for summary judgment (Doc. No. 70) is granted in its entirety;
2. Plaintiff's pending motions (Doc. Nos. 124, 125, 126, 135, 137) are denied as moot;
3. All currently scheduled dates, including the final pretrial conference and trial dates, in this action are vacated and;
4. The Clerk of the Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: **November 16, 2018**

UNITED STATES DISTRICT JUDGE